Cynthia Doyle v. UBS Financial Services, 24696 Thank you. Attorney Bradspees, did I get that right? Bradspees, yes your honor. Good morning. Josh Bradspees on behalf of Appellants, UBS Financial Services, Inc. and J.S. Blair. This appeal starts and ends with the Spear-Drake case. For over 20 years, Spear-Drake has been the standard in the Second Circuit for cases like this one, where a party is seeking to avoid arbitration based on the argument that their agent lacked authority to enter into the arbitration agreement. Can I, before we even get to Spear-Drake, it strikes me that we have a threshold agreement before we get to have that conversation, or threshold issue. And that has to do with the timing of the arbitration demand here, or the motion. And I'm trying to figure out why we shouldn't view your act of seeking a judgment from the district court dismissing the case, why we shouldn't view that as a strategic choice to try to get a favorable judgment from the district court, rather than going to the arbitrator and perhaps raising that issue in front of the arbitrator. So, two points in response to that, your honor. Number one is we were not the movement. We did not file a motion to dismiss. You joined it. We joined in saying we agreed with the relief they were seeking. And you joined it and you didn't accompany your joiner with, and by the way, this is, we actually think this is subject to arbitration, and presumably this very question would have been one of the questions presented to the arbitrator, the significance of the state case and whether to defer the arbitration. That's correct. But at the same time, there was a stipulation on file reserving our right to answer or otherwise move, and the first response of pleading that we filed was a motion to compel arbitration. And if you look at the case law, waiver of arbitration. That waiver is much more litigation in the district court or the trial court before the arbitration is raised. That's right. Typically it requires protracted litigation, discovery, and the like. Here there was none of that. This was all pretrial motion practice. So I think this is where you've got a party, and I understand protracted versus not is sort of a judgment call, but where somebody sought a ruling on the merits, a dispositive ruling on the merits from the district court, and only after losing on that did they seek to compel arbitration. Well, it wasn't a ruling on the merits based on a failure to state a claim for relief. No. It was a motion to stay or dismiss this action in deference to a pending state court action. Make it go away pending the state court action. Or stay it, right. Yeah. So it was not a decision on the merits. It wasn't seeking a judgment on the merits or consideration of any of the merits of the claims. But if this case had gone, if the plaintiffs had gone straight to arbitration, they had filed an arbitration manual and arbitrated, that would have been an issue that you would have addressed to the arbitrator. Hey, we shouldn't arbitrate this until the state court proceeding has run its course. It's potentially an argument that could have been raised to the arbitration panel. That would have been appropriate. The arbitrator is, that's within the competence, the scope of what an arbitrator, nobody would have said, no, you have to go to the district court to litigate that issue. I would agree with that. Okay. All right. I will let you go ahead, but sorry, I just wanted to. Sure. So I don't think there's been any waiver. I think there's clear distinctions in the case law regarding what's required to meet that threshold. But when it comes to it, Spheer-Drake, for 20 years, has told the Second Circuit what's required when you're saying, I'm trying to avoid arbitration based on an agent that lacked authority, allegedly, to enter into a contract. And you have to come forward with evidence that the other side knew or should have known about the agent's alleged lack of authority. And Spheer-Drake goes on to give us specific examples of the type of evidence that's required. In that case, it dealt with various contracts. Most of them were compelled to arbitration, but one was not. And the one that wasn't involved in affidavit stating that the other side was in possession of a document that expressly gave them notice that the agent in that case was entering into a contract that exceeded the amount of his monetary limit. And based on that, Spheer-Drake said that is the type of evidence that would require the validity of a contract to go to a court versus an arbitrator. So it's hard, concrete proof that the other side knew or should have known. But on the other hand, who can cloak someone with apparent authority? Can the actor themselves, just by speaking forcefully and seeming very confident, right? Is there a case law that says that the person with, that would grant authority, has to take some action that would cloak the actor with apparent authority? I think it's twofold, Your Honor. So first, in this case, the foundation did grant authority to John Blair, the trustee, by appointing him as a trustee and giving him that title. Well, a certain authority. You don't, being a trustee doesn't give you apparent authority to make all financial decisions for a trust, right? It may or may not, depending on the trust. Well, but that alone, the word comma trustee after your name, do we agree that would not be enough to cloak someone with apparent authority to move bank accounts? I don't agree with that, Your Honor. I think in certain circumstances that certainly would give a trustee authority to have financial control over a foundation's assets. Any one trustee is automatically, just by being a sole trustee, that's enough for a financial institution to accept that that individual has the authority to move without additional signatures or consents. Combined with a representation from that trustee that they're authorized to act. Combined is the word I'm looking for, sir. So I'm asking you, is alone the fact of appointment as a trustee sufficient? You said yes, but now you're saying combined. Well, I said it's twofold in my initial answer. Okay. I think the mere act of a foundation appointing someone as a duly appointed trustee denotes to the world that this person is authorized to act on behalf of the foundation. And then separate and apart from that, you have the trustee himself saying, I'm authorized on behalf of the foundation to open accounts and manage the investment. And does it have a course of conduct argument here that over a period of time, everybody assumed that he had authority? Very much so. He acted with a number of transactions as his various different corporations took over the funds, and all of that was approved. That's exactly right. So there's a nine-year history. So then you get to 2015, and at that point, it seems to me you have a ratification argument. So it's not only a ratification argument. In the first place, we have nine years of John Blair as trustee working with the Arthurs Maloof team, controlling the investment accounts of the foundation at Smith Barney, which later became Morgan Stanley, from 2006 to 2015. In 2015, the Arthurs Maloof team moves to UBS, and as is common, many of their client accounts followed, including the foundation's. There is absolutely nothing in the record, not a single statement. Remind me, that specifies arbitration in that agreement? The UBS client account agreement, yes. 2015. Which is required of every brokerage firm under FINRA rules. They're required by rule to have an arbitration provision that all customer disputes go to FINRA arbitration, which is the designated forum for customer disputes in the securities industry. So in 2015, there's not a single shred of evidence that all of a sudden UBS was put on notice that there's a change in the rules, and the trustee that they've been working with for nine years all of a sudden isn't authorized to continue. UBS hadn't been working with them for nine years, but the son, Jay Blair, moved to the... The team including the son, that's right, Your Honor. Right. So the Arthurs Maloof team, which does include Jay Blair, had been working with... So he's a new client, the trust is a new client to UBS. I'm curious as to sort of industry practice. I would have guessed that industry practice would have required some sort of resolution from the board or operating articles of something documenting the authority of an individual trustee to control the movement. Sure. So there's actually nothing in the record below addressing that standard practice in the industry. But in my experience, what is standard practice is to have the fiduciary represent that they have authority and indemnify the brokerage firm for any potential issues of stemming from their representation. So if they don't have the full authority of the foundation, for example, the brokerage firm can look to the trustee. That's standard industry practice. It's not, in my experience, standard practice for a bank or a brokerage firm to do a full vetting of each client to make sure that the representations from fiduciary are consistent with their internal... So the after the fact, and I realize this isn't in the record, or at least I don't think it is, the after the fact ratification documentation that we have here, that wasn't done to enable UBS or the brokerage group to dot the I's and cross the T's? It was not. So that was not a document that was provided to UBS. But we have to ask ourselves, where are we going in light of that 2015 consent? Within 20 days of these accounts being opened, the foundations investment committee, which includes two of the appellees, expressly approved and authorized the opening of these accounts and the execution of the UBS account agreement. And it's black letter law in New York contract law when someone is claiming that a contract is void due to a lack of authority that can be ratified. So, and I get that this ratification is potentially very important, and I think the district court did too. I'm curious how we're supposed to think about it in light of the fact that the parties didn't really raise it and argue about it. You didn't raise it and argue about it. It was not pressed, but it certainly was passed upon by the district court in two ways. One, the district court looked at it and said, is this a sufficient basis to compel arbitration? And the district court concluded in error, we submit, that there were still fact issues as to whether the foundation had agreed to enter into that UBS account agreement in light of that 2015 consent. So if we find that that was error, do we correct it simply by saying that it was arbitrary, that the agreement, that there's nothing, there's no dispute over its authority? Correct. There's no genuine issue of material fact. It's clear and unequivocal, which is the district court's terminology for that 2015 consent. They agreed to this. So how do we, again, because it wasn't pressed, nobody was developing a record on the ratification, and we have some arguments that are being made on appeal, but I'm just wondering whether that's an issue, whether plaintiffs have created a genuine issue of fact as to whether or not that ratification validated the contract, made it enforceable. Is that a question that we have to ask the district court to tell us its thoughts in the first instance? I don't think so, Your Honor, and here's why. Number one, appellees are the ones who put the 2015 consent into the motion record. It's part of the motion record that was decided by the district court, and it's their document. They can't run from their own document. It's not a document that UBS had and didn't rank. But in the absence of UBS saying, ah-ha, it doesn't matter whether you had actual or apparent authority when the contract was executed because you ratified, I'm imagining that if they had said that, there would have been a flurry of additional development of evidence. Maybe not. Maybe there's nothing more to develop. But it seems to me we oughtn't to presume that the record as it stands is identical to the record as it would stand if that issue had been raised. So the arguments that were raised both below and on the appeal are not arguments that would require any type of factual record. They're legal arguments. You can't ratify a void contract as their position, which is contrary to the black letter law. It's not that we didn't sign this 2015 consent and authorize it. Well, now they're making arguments on it. I get that you can't ratify. I get that that's their bottom line, but I thought there were also claims about the circumstances of the ratification that would call it into doubt, to call into doubt whether it's actually a valid ratification. They have not articulated any specific basis. Okay. As to why. And, again, it's a separate issue, separate and apart from Spheer-Drake. They're required to come forward with evidence that UBS knew or should have known that their trustee allegedly lacked authority to enter this account agreement. Separate and apart from that, it's crystal clear from the record they agreed to those actions. They authorized and approved those actions. So it's really two separate and independent reasons why this matter should be reversed and compelled to arbitration. If we say that there's no real issue, there's no material issue of fact in terms of the agreement, then what do we do with the motion, the denial of the motion to compel by the district court? It's reversed with an order direct to be compelled to arbitration. To compel? Is there any other argument that could be made against compelling it? I don't believe so, Your Honor. I think under the case law, the evidence simply is not here. Yeah. And simply uttering the words, void ab initio, those are not magic words that get you to walk away from an arbitration agreement. For good reasons, Spheer-Drake requires proof and real proof, not just speculation, not allegations, but proof. And the record here confirms just the opposite. Everything about this relationship suggests UBS had no basis to either know or suspect there was no authority here. All right. We've kept you well beyond your time. We'll hear from you again. No, we'll hear from Attorney Whiteley. Good morning, Your Honors, and may it please the Court. My name is Brian Whiteley. I represent the plaintiffs in Appalese who are the trustees of the Tower Foundation, and with me is my colleague who's on the brief, Ben Zachrin. The Tower Foundation supports organizations serving children throughout western New York and eastern Massachusetts with certain disabilities and health issues. We ask the Court to affirm the denial of the appellate's motion to compel arbitration on three grounds. First, the district court appropriately rejected the appellate's arguments premised on apparent authority. Second, the central argument that John Blair's execution of the agreement in 2015, that 2015 consent, sorry, that that somehow ratified the agreement was waived and it really was not pressed in our view at the district court level. And then third, although the district court didn't reach the level, I do believe that the appellant's delay in seeking to compel arbitration really forecloses the arguments now. The delay was, what, 10 months or something like that? It was 10 months, Your Honor, but I think really, and the case I would point the Court to on that, which is a relatively recent Supreme Court case, the Morgan v. Sundance case cited in our briefs, really the focus is on, you know, have they really given up a right? Have they engaged in some form or fashion in the litigation? And, you know, here it wasn't simply, well, let's just wait and let's sit back and let the other motion go. Yeah. But they hadn't filed a response in paper yet directly. Well, correct, Your Honor, but they did join. The first motion that they made was to compel arbitration, right? After the other motion was denied. Denied. And at no time did they attempt to preserve the argument, right? So in other words, there's no stipulation that says this is what we will do. It has to be immediately preserved if you do something that's inconsistent with arbitration. Or my understanding is that these cases are fact-specific, and most of the ones that say that you've waived are rather extensive litigation that has occurred. And you can really see a waiver there. I do agree that there's quite a bit of litigation in some of the cases, but there have been time issues, right? So 10 months elapsed here. That's longer than the period in the Corallo, Lederdex, PPG, and the Trump cases that we cited. And I think if we just walk through it. Let's examine why there was a delay. Right. And what was happening in court and what was the reason for the delay and all of that. Deciding the case based on the amount of time alone would seem to be not correct. I would agree with that, Your Honor. But here we have an extension of the time to answer or otherwise move without any attempt to hold that threshold issue, right? Nothing telling us that they're going to try to move to compel arbitration. One of the things that sort of makes it hard for us to evaluate this is after Morgan and after the Supreme Court knocked prejudice out as a factor when that was our primary factor all these years, we don't even know for sure whether what we're left with is just the other two factors or whether there's a whole different framework. Do you have a position on that? You know, I think post Morgan and then there's the Billy case, which is a Second Circuit case from 2023, and the discussion is conduct that evinced a knowing relinquishment of that right. And I think the passage of time is part of that. It's not exclusive, but I think that is part of that. I think an extension of time to answer or otherwise plead without raising the potential for arbitration, the negotiation of the resolution of our motion for preliminary relief, which was resolved without the need for the court to entertain the motion, but there were still the parties working together on that. Then four months later, rather than moving the compelled arbitration, joining Mr. Blair's, John Blair's motion to dismiss and again failing to reference or reserve any purported rights to arbitration. And in that briefing, appellants omitted arbitration as a basis for staying the proceedings. They could have at the minimum noted it there. So it was really only after that motion was denied that this came forward. So in my view, Your Honors, that is conduct that evinces a knowing relinquishment of a party's right. With the period of time that you're talking about, can you – how are you prejudiced by the delay? Well, I – with all due respect, Your Honor, I don't know – I think the Morgan case takes prejudice out of the equation. I think that so – but at this stage, prejudice is the fact that we spent this much time and now here we are still dealing with the issue and, you know, we potentially have to move and start all over again in a FINRA arbitration. But I – really, I – you know, my understanding of the case law now is that that prejudice is off the table. Can I shift to the apparent authority? And I want to just make sure I understand. So first of all, my understanding of the legal framework is that you have to, at least as a burden of production, come up with enough reason to conclude that there's a disputed issue as to whether Mr. Blair had – John Blair had apparent authority to enter into this agreement. And it's a little bit weird because usually on the ultimate issue, the burden is on the other side. But you've got to come up with something. And so can you just remind me now as we sit here, what are the three most important or two or one elements of the record that we can point to to say, oh, yeah, there's actually a genuine dispute as to whether the principal made representation for – created apparent authority. No, I understand the question, Your Honor. I think the overarching issue is that the apparent authority is focused on the conduct of the principal. What did the principal do that cloaked the agent in apparent authority? And John Blair, as trustee, is at the same time with a conflict saying, I also have this authority. So in our view, I really don't think we're at a point where we can be talking about custom in the industry, custom and practice in the industry, because that really isn't part of the record. But that may indeed be part of what an actual factual development of the record might be. Although if you were trying to create a dispute of fact, I would have thought if the industry custom was on your side, it would have behooved you to raise that in the district court to say that the industry practice would be sort of like I raised in my question. And that would then, I think, be clearly enough to create a dispute, or at least more clearly. So not having raised that, is your main piece of evidence the absence of evidence as to some act by the principal? Well, but I still think we have to recognize the stage of the proceeding, right, which is we have the complaint and all the inferences in the complaint. As the judge below recognized, those inferences would be in our favor. But you've got to present evidence, right? We're treating this a little bit like summary judgment, and you have to present some evidence to create a dispute as to whether this authority existed so that there's something for the court to try. And so what are the pieces of evidence that you want us to focus on as we're evaluating that question? I think, Your Honor, it's the absence of any evidence that UBS had that he actually had the authority to execute the agreement. All right. Is there another way to word that? Are you saying that, because you could have said, you could have put in an affidavit that said the investment committee, neither the investment committee nor the trust ever made any representations to UBS that John Blair had this authority. And that would have been, I think, created the dispute. But I think what I hear you saying is not that you presented evidence to that effect but that there is no evidence on the question. Well, our briefing certainly identifies the investment committee charters, the 2006-2008, particularly 2008, which does, in our view, and the district court judge discussed this a bit, indicate that John Blair alone wouldn't have had that authority, that it would have had to have come from the investment committee. So I think that gets you there on actual authority, but now shifting to apparent authority, which really has to do with what information was or wasn't given to UBS. What's your evidence? Were those documents sent to UBS? Is there evidence? No, those documents weren't. We don't have any evidence that indicates those documents went to UBS. But I do think, at the end of the day, that the burden is on UBS to make sure that the agent does have the authority. And where does that come from? Is that the industry practice? Well, to me, that should be a matter of law, because the issue is that authority has to come from the principal, in the context of apparent authority. And there's some mention that you had submitted some evidence that related to the relationship between John Blair and Jay Blair. So it's sort of interesting, because now after Judge Walker mentioned the course of conduct, your opponent has sort of seized on the course of conduct as a source of support for apparent authority. I think you argued that it undermined any sense of apparent authority. Can you just touch on that for a minute? I did, Your Honor, and I think that might be another point that I could have raised here. So, in essence, John Blair had, clearly this is the overarching theme, I think, of the litigation and the claims, had taken control over the trust and had this almost Bengali-like control over it. But focus me on this question of the relationship. Right. So, for years, he made sure that the investment accounts were managed and went to the benefit of his son. And his son had that Jay Blair at UBS, whose knowledge should be... And why does that undermine apparent authority? I'm sorry to rush you, Your Honor. That's the question I'm trying to understand is why does that John Blair, Jay Blair, obviously father-son, but also long-term sort of financial relationship, why does that undermine the idea that he had apparent authority? Because Jay Blair should have understood the fact that the investment committee itself had that. So Jay Blair would have known this, and Jay Blair is now at UBS, and so that's on UBS. So that's imputed to us. Thank you. I recognize that I'm out of time. Thank you, Your Honors. Thank you. I appreciate it. Mr. Rothfuss. Thank you. Just very quickly, with regard to the 10-month delay period, there was no intent by UBS to litigate as opposed to arbitrate because there was nothing going on at all during that 10-month period. We were waiting for the district court to decide the motion to dismiss. So the case was just sitting, waiting for a decision. Well, your motion to dismiss. John Blair's motion to dismiss that UBS joined it. Yeah. Correct. That makes it yours, too, right? I mean, it's your motion as much as his once you join it, isn't it? It's not our response of pleading. It's not a motion in response to the complaint that we filed. Our first motion in response to pleading was the motion to call arbitration. So you wouldn't have gotten the advantage of that? If it had been dismissed, you would not have been dismissed? The motion saw a dismissal of the action in its entirety or a stay of the action in its entirety. Right, but you weren't part of that. The court could have elected to dismiss as to the moving party and not as to you. It's possible. Okay, so you had to choose either you're in or out on that motion. It's possible the court could have done it in part or in whole, with or without UBS's consideration. So getting back to the actions of the foundation, for nine years John Blair was held out as the foundation's trustee and authorized party to direct the investment accounts of the foundation. But you said in your brief that that was not, that wasn't good evidence. You said in your brief that that was thin evidence at best, because you were referring to, I don't see this argument about a course of conduct in your briefing. I'm missing it, I think. So it is part of our briefs in that there's this long history. This wasn't a new relationship at UBS. Right. It was a continuation of a nearly decade relationship with the Arthur Maloof team that moved to UBS. But I don't see where in your brief you claim that that course of conduct supported a finding of apparent authority. So I don't think we have to, because the burden in this instance, there's a difference between the burden to come forward with evidence under Spear-Drake to have the question of the validity of a contract go to the arbitrator versus the ultimate burden to establish whether there was authority, actual or apparent, what the industry standards are. Under Spear-Drake, all of that goes to the arbitrator. And they can still argue the contract's void. He didn't have authority. All of these arguments that they're making go to the arbitrator. And it goes to the essence of their claims, which is — But arbitrability is for the court in this case, not for the arbitrator, right? The validity of the contract goes to the arbitrator under Spear-Drake because — Whether it's arbitrable under the contract is the point. Correct. But the issue — But who wins the arbitration? But it's not UBS's — correct. It's not UBS's burden in this forum. No, I'm just asking about your theory, your argument, because now it sounds like you're arguing that there was a course of conduct that supported apparent authority. No. The questions earlier related to what did the foundation do as the parent to give authority. Right. And I said by designating John Blair as a trustee, that's one action. The other action is holding him out as their authorized party on these accounts with the Arthur's Moose team for nearly a decade. That's relevant here. It's not just they showed up, knocked on the door at UBS and said, we'd like to open an account. And what about your opponent's claim that, in fact, that 10-year history included that J. Blair would have known that throughout that 10-year history he wasn't authorized to act solo in these regards? Actually, I actually wrote his words down. It wasn't J. Blair would have known. It should have known. It's pure speculation. There's nothing in the record that J. Blair knew. Well, but Mr. George made a finding on that, right? Well, actually, the finding from the court — He said it was thin but good enough, right? The judge said that the longstanding relationship between J. Blair and the foundation is sufficient evidence. That's exactly the type of speculation that the Spheer-Drake court rejected as insufficient. Can you help me? I'm struggling a little bit with the burden of production and the burden of proof here. And I understand Spheer-Drake and why it's the party saying there's no — in this case, it's plaintiff's job to come up with some evidence creating a genuine dispute. What's hard is that the subject matter of the dispute here is apparent authority. And typically, the third party is the one who's got the burden as to apparent authority. They're bringing in evidence of here's what the representations of the principle made to us. And instead, what we're essentially saying is that the plaintiffs have to prove a negative. And I'm just trying to figure out how that works here. So I don't think it's proving a negative. What I think is coming forward with some evidence, not conclusive proof, not beyond any reasonable doubt standard, but some evidence under Spheer-Drake that there's a chance they could avoid arbitration under this theory. But if their theory is we did nothing to ever tell — to lead UBS to believe that John Blair had authority to execute this agreement, if that's their position, what more can they produce to prove that? They've said that. Why isn't that enough to at least shift a burden to you all to say, well, yeah, here are some representations? Well, number one, the record doesn't reflect that. The record reflects that he was held out for nearly a decade as their authorized party, and he was a duly appointed trustee. So they did take actions to hold him out to the world as their authorized representative. And we have in the record representations from John Blair. It's part of the signature page to the UBS client agreement where he says, I'm an authorized trustee. I have the authority on behalf of the Foundation to enter into this agreement and open these accounts. But we know an agent can't — an agent can't attest. You can't rely on an agent's representations to establish apparent authority to represent the principal. It's got to be something from the principal. Not solely, but in combination with what the Foundation did here. Okay. And a total lack of any evidence from the appellees that UBS knew or should have known. Just saying that, well, there's a familial relationship or a longstanding relationship, that's not evidence. And Speer-Drake was very clear about that. All right. We appreciate your arguments, both of you. Thank you. We will take your advice.